IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| SHEILA S. OWENS, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | CV 06-1573-KI | |
| v. ) | | |
| ) | | |
| MICHAEL J. ASTRUE, Commissioner of Social ) | OPINION AND ORDER | |
| Security, ) | | |
| ) | | |
| Defendant. ) | | |

RORY LINERUD
Linerud Law Firm
PO Box 1105
Salem, Oregon 97308

    Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 SW Third Avenue, Ste 600
Portland Oregon 97204

1 - OPINION AND ORDER

JOANNE E. DANTONIO
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Ste 2900 M/S 901
Seattle Washington 98104

    Attorneys for Defendant

KING, District Judge:

## INTRODUCTION

Plaintiff Sheila Owens challenges the Commissioner's decision denying her applications for disability insurance benefits and supplemental security income payments under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c) and affirms the Commissioner's decision.

## BACKGROUND

Owens was born July 26, 1957. She completed high school and worked as a retail sales attendant, casino change person, home attendant, child care provider and laundry worker. She was diagnosed with multiple sclerosis in December 2001 and stopped working on January 20, 2002.

Owens alleges she became disabled on January 20, 2002, due to multiple sclerosis, loss of hearing in the left ear, carpal tunnel syndrome in the right arm, feeling tired all the time and headaches. Tr. 76.[1] She did not allege mental impairments in her disability report, but asserts them in her present appeal.

The ALJ applied the five-step disability determination process set forth in 20 C.F.R. §§ 404.1520, 416.920. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ resolved Owens's

---

[1] Citations to "Tr." refer to the official transcript of the administrative record.

claim at step four, determining that she retained the residual functional capacity (RFC) to perform her past work as a sales attendant. The ALJ made the alternative finding at step five that Owens could make a vocational adjustment to other jobs that exist in the national economy.

The ALJ concluded that Owens was not disabled as defined by the Social Security Act under either alternative.

## **DISCUSSION**

The court reviews the Commissioner's decision to ensure that proper legal standards were applied and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). The claimant bears the burden of proving that she is disabled. *Id.* at 1193-94.

The ALJ determined that mental impairments limited Owens to "simple, repetitive tasks." Tr. 15. Owens objects that this RFC limitation does not fully reflect the ALJ's finding that she has "moderate restrictions in social functioning, and concentration, pace, and persistence." Tr. 15.

When a claimant alleges mental impairments, the ALJ applies the familiar five-step framework, but must incorporate the psychiatric review technique described in 20 C.F.R. § 404.1520a and 20 C.F.R. § 416.920a. This technique requires the ALJ to rate the degree of limitation in four broad functional areas: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

These ratings are used at steps two and three of the decision making process. Step two is the severity threshold; the claimant must show that she has an impairment that causes more than minimal limitations on her ability to perform work-related functions. If the claim survives step two, the ALJ

proceeds to step three and determines whether the impairment meets or is equivalent in severity to any of the presumptively disabling conditions listed in the regulatory Listing of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1. *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), (d), 416.920(c), (d).

The claimant must show a significant degree of limitation in at least one of the four broad areas of function to surmount her burden of showing that she has a severe impairment at step two. If the ALJ finds no limitation or only mild limitation in all four broad categories of function, the ALJ will conclude that the impairment is not severe. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

Under the psychiatric review technique, the severity ratings on the four broad categories of function are also used to resolve step three. To establish equivalence with a presumptively disabling mental condition in the Listing of Impairments, the claimant must show marked impairment in more than one of the four broad categories of function. 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2).

As Owens correctly states, the ALJ found her moderately limited in two of the broad categories: social functioning and concentration, persistence or pace. He properly resolved step two in her favor by finding that she has severe mental impairments. He properly resolved step three by finding that she failed to establish a listed impairment because she had no more than moderate impairment in the broad functional categories.

If the claimant meets her burden at step two, but fails to establish a presumptively disabling impairment at step three, the ALJ must assess her RFC and proceed to steps four and five where the RFC is compared to the work requirements of past work and other work in the national economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).

The ALJ does not use the four broad categories of function in assessing a claimant's RFC. The RFC assessment requires a more detailed assessment of specific work-related functions for meaningful comparison with the work-related activities required in specific occupations. SSR 96-8p, *available at* 1996 WL 374184.

To assess Owens's RFC, the ALJ considered the opinions of psychologists, Owens's activities and work history, and the record as a whole to determine her limitations in specific work-related functions.

Linda Sherman, Ph.D. found that Owens had no deficits in understanding or comprehension, but had some difficulty with concentration and gave up easily. She found Owens socially introverted, but was unsure that this would pose a significant barrier to employment because Owens had successfully performed jobs that required interpersonal skills in the past. Dr. Sherman found no evidence that multiple sclerosis had affected Owens's mental function. Tr. 198-99.

Robert Kurlychek, Ph.D., found that Owens's difficulties in mental function were related to pre-existing intellectual and cognitive limitations. Owens had difficulty on tasks that required visual spatial processing, sustained attention and concentration and mental calculation. Tr. 242.

Michael Balm, M.D., found that Owens's memory, attention and concentration were within normal limits. Tr. 255.

The ALJ concluded that although Owens had difficulty sustaining concentration in tasks requiring visual spatial processing and mental calculation, there was no evidence that she had difficulty in simple, repetitive tasks. Similarly, despite being shy and introverted, no evidence suggested that Owens could not perform basic work-related social skills such as getting along with coworkers and supervisors.

The psychologists' opinions show that Owens's limitations in concentration and social function derived from pre-existing deficits that did not keep her from performing any of her past jobs. The ALJ could reasonably infer that Owens retained the capacity to perform simple, repetitive tasks and interpersonal skills such as those she had demonstrated in her past production work.

Accordingly, the ALJ's RFC assessment excluding all jobs except those limited to simple, repetitive tasks properly accounted for Owens's mental limitations. The RFC assessment reflects reasonable conclusions that can be drawn from the record as a whole regarding specific work-related functional limitations from Owens's mental impairments. Under such circumstances, the court may not substitute its judgment for that of the Commissioner. *Batson*, 359 F.3d at 1193. The Commissioner's decision must be upheld, even if the "evidence is susceptible to more than one rational interpretation." *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

Owens also contends the ALJ elicited testimony from the vocational expert with a hypothetical question that did not accurately reflect her mental impairments. She correctly states that vocational testimony based on unsupported hypothetical assumptions "has no evidentiary value." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) quoting *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). On the other hand, an ALJ is not required to incorporate hypothetical limitations that he finds unsupported by the record. *Batson*, 359 F.3d at 1197-98.

The ALJ considered all of the evidence and reached an RFC assessment based on the limitations supported by the record as a whole. He elicited vocational testimony based on hypothetical limitations that accurately reflected his RFC assessment. The court must uphold the Commissioner's determination if it is supported by substantial evidence, even if Owens might reasonably interpret the evidence differently. *Andrews v. Shalala,* 53 F.3d at 1039. Accordingly,

Owens's contention that the Commissioner's determination was based on improper vocational testimony cannot be sustained.

## **CONCLUSION**

Based on the foregoing, the ALJ's decision that Owens is not entitled to disability insurance benefits or supplemental security income under Titles II and XVI of the Social Security Act is based on correct legal standards and supported by substantial evidence. The Commissioner's final decision is AFFIRMED and the case is DISMISSED.

DATED this __22nd__ day of October, 2007.

      /s/ Garr M. King
      Garr M. King
      United States District Judge